AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
Middle District of Pennsylvania  ▢

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 1:25-MC-  0643
ROSE GOLD WIRELESS TELEPHONE (IPHONE), )
CURRENTLY LOCATED AT 6400 FLANK DRIVE, )
HARRISBURG, PA 17112 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A

located in the _____ Middle _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Drug trafficking |
| 21 U.S.C. § 846 | Conspiracy to commit drug trafficking |
| 18 U.S.C. § 924 | Use and Carrying of a Firearm During and In Relation to a Drug Trafficking Crime |

The application is based on these facts:
I, Kurt Zitsch, being duly sworn, depose and state that... (See attached continuation pages)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Task Force Officer Kurt Zitsch, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Telephone _____ *(specify reliable electronic means).*

Date: JULY 10, 2025

_____
*Judge's signature*

City and state: Harrisburg, Pennsylvania

Daryl F. Bloom, Chief U.S. Magistrate Judge
*Printed name and title*

## CONTINUATION SHEETS IN SUPPORT
## OF AN APPLICATION FOR A SEARCH WARRANT

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations pursuant to 19 U.S.C. § 1401(i) and is authorized to enforce all Customs and related laws, conduct searches, make seizures, and arrests, and perform other law enforcement duties authorized by law, all subject to any limitations and conditions annotated on his/her "Designation Customs Officer" form with the U.S. Department of Homeland Security.  I have been employed by the U.S. Department of Homeland Security Investigations (HSI) as a Task Force Officer (TFO) since December 2023.

1

3.     I have participated in numerous investigations of unlawful drug distribution and have conducted or participated in surveillances, the execution of search warrants, the recovery of substantial quantities of narcotics and narcotics paraphernalia, and the debriefings of informants and cooperating witnesses.  I have reviewed taped conversations, as well as documents and other records relating to narcotics trafficking and money laundering.  Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, the possession and use of firearms in connection with trafficking of such drugs, the use of electronic communications, including cellular telephones, to further those activities and the methods by which narcotics traffickers store and conceal the proceeds of their illegal activities.

4.     I have successfully completed seminars and training sponsored by the Department of Homeland Security, the Northeast Counterdrug Training Center (NCTC), and the Pennsylvania Office of Attorney General, dealing with search and seizure warrants, enforcement of state and federal drug laws, and the identification of

2

controlled substances.  I have also received training in surveillance, counter-surveillance, smuggling of drugs and laundering of drug proceeds.

5.    I have served as a monitor, a member of the surveillance team and have listened to intercepted phone calls between individuals identified as suspected narcotics traffickers.

6.    This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.    Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841, 21 U.S.C. § 846 and 18 U.S.C. § 924 have been committed.  There is also probable cause to search the iPhone described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8.    The property to be searched is one (1) rose gold wireless telephone (iPhone) contained in a gray/green Under Armour case

3

currently, located in the evidence storage facility of the Pennsylvania Office of Attorney General, 6400 Flank Drive, Harrisburg, PA 17112.

9.    The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

10.    During the month of August 2023, your Affiant met with a confidential informant, hereinafter referred to as "CI," at a pre-arranged location. At this time, the CI related that they knew of an individual only known to the CI as "Kwoncho" who was selling quantities of ecstasy pills in and around the area of Harrisburg, Dauphin County, Pennsylvania.  Further, the CI related that they had the ability to purchase ecstasy pills at $6/per pill from "Kwoncho" and could purchase 50-100 pills at a time. The CI related that "Kwoncho" has a phone number of (717) 503-1254 that he/she utilizes to contact "Kwoncho." I provided the phone number of (717) 503-1254 to Pennsylvania Office of Attorney General (PA OAG) Intel Analysts who conducted open source queries and law enforcement searches of the phone number. The phone number was found to be associated with the

name Shakwon Jamison (CLEAR) and the name "Shakwon" in CashApp with an associated profile picture. PA OAG Intel Analysts identified a Shakwon Jamison with date of birth November 22, 1995.

11.   During the course of this investigation, purchases of controlled substances were utilized as an investigative method. A controlled purchase is a method used to buy illegal drugs through the use of a confidential informant, who is under the "control" of law enforcement. There are several steps. The CI is searched before and after the controlled purchase to ensure he/she has no money or drugs on him/her. He/she is then given pre-recorded money to make the purchase. He/she is then taken or followed by law enforcement to the location of the drug purchase. He/she remains under the constant surveillance of law enforcement. After the purchase he/she returns to law enforcement and is taken to a debriefing location, where the purchased drugs are surrendered to law enforcement. The CI often provides a statement as to what took place during the purchase. This process was followed at all times in this investigation unless otherwise noted by Your Affiant.

5

12.    Controlled purchases of ecstasy were made from Jamison and his co-defendant, Zierra Jones, on three (3) separate occasions: August 21, 2023, August 30, 2023, and September 13, 2023.

13.    On August 30, 2023, Jamison informed the CI that he could also provide fentanyl to the CI.    At that point, the course of the investigation focused on Jamison's distribution of fentanyl.    In September 2023, Jamison informed the CI that he could sell fentanyl to the CI at $50 per gram.

14.    During the course of this investigation, the CI made a total of seven (7) purchases of fentanyl. Those purchases occurred on the following dates: September 25, 2023, October 2, 2023, October 10, 2023, October 25, 2023, November 8, 2023, November 21, 2023, and December 8, 2023. All of the purchases were arranged by Jamison, except for December 8, 2023, were arranged by Jamison.    Three (3) purchases were conducted by Zierra Jones, the girlfriend of Jamison, with Jamison conducting the other four (4) purchases.    On November 21, 2023, Jamison also sold the CI a Taurus PT 809 9mm firearm.

6

15. Agents outfitted the CI with audio and video recording devices during several of the controlled purchases. Covert video surveillance was also utilized during the controlled purchases.

16. The below outlines the ten (10) controlled purchases of ecstasy pills, fentanyl, and a firearm from Shakwon Jamison or through Zierra Jones:

- On August 21, 2023, the CI contacted Jamison through phone number (717) 503-1254 where arrangements were made for the CI to purchase a quantity of ecstasy pills from Jamison. The CI was directed to the area of 3655 Chambers Hill Road, Harrisburg, Dauphin County. Jamison met with the CI and sold the CI fifty (50) ecstasy pills.

- On August 30, 2023, the CI contacted Jamison through phone number (717) 503-1254 where arrangements were made for the CI to purchase ecstasy pills from Jamison. The CI was directed to the area of 3655 Chambers Hill Road, Harrisburg, Dauphin County. Jamison's girlfriend, Zierra Jones, sold the CI fifty (50) ecstasy pills. The transaction was video recorded with a device utilized by the CI and aerial surveillance.

- On September 13, 2023, the CI contacted Jamison through phone number (717) 503-1254 where

7

arrangements were made for the CI to purchase ecstasy pills from Jamison. The CI was directed to the area of 3655 Chambers Hill Road, Harrisburg, Dauphin County. Jamison's girlfriend, Zierra Jones, sold the CI one hundred (100) ecstasy pills. The transaction was video recorded with a device utilized by the CI and aerial surveillance.

- On September 25, 2023, the CI contacted Jamison through (717) 503-1254 where the CI arranged to purchase fentanyl from Jamison. The CI was directed to the area of 3655 Chambers Hill Road, Harrisburg, Dauphin County. Jamison sold the CI 9.85 grams of fentanyl. The transaction was video recorded with a device utilized by the CI.

- On October 2, 2023, the CI arranged to purchase fentanyl from Jamison. The CI communicated with Jamison through (717) 503-1254. The CI was directed to the area of 3655 Chambers Hill Road, Harrisburg, Dauphin County. Jamison's girlfriend, Jones, sold the CI 19.88 grams of fentanyl. The transaction was video recorded with a device utilized by the CI and aerial surveillance.

- On October 10, 2023, the CI arranged to purchase fentanyl from Jamison. The CI communicated with Jamison through (717) 503-1254. The CI was directed to the area of 3655 Chambers Hill Road, Harrisburg,

Dauphin County. Jamison's girlfriend, Jones, sold the CI 17.53 grams of fentanyl. The transaction was video recorded with a device utilized by the CI and aerial surveillance.

- On October 25, 2023, the CI arranged to purchase fentanyl from Jamison. The CI communicated with Jamison through (717) 503-1254. The CI was directed to the area of 3655 Chambers Hill Road, Harrisburg, Dauphin County. Jamison sold the CI 52.64 grams of fentanyl. The transaction was video recorded with a device utilized by the CI and aerial surveillance. The transaction was also audio recorded.

- On November 8, 2023, the CI arranged to purchase fentanyl from Jamison. The CI communicated with Jamison through (717) 503-1254. The CI was directed to the area of 3655 Chambers Hill Road, Harrisburg, Dauphin County. Jamison sold the CI 81.08 grams of fentanyl. The transaction was video recorded with a device utilized by the CI and aerial surveillance. The transaction was also audio recorded.

- On November 21, 2023, the CI arranged to purchase fentanyl and a firearm from Jamison. The CI communicated with Jamison through (717) 503-1254. The CI was directed to the area of 3655 Chambers Hill Road, Harrisburg, Dauphin County. Jamison sold the CI 24.92

9

grams of fentanyl and a Taurus PT 809 9mm firearm.
The transaction was video recorded with a device utilized
by the CI and aerial surveillance. The transaction was
also audio recorded.

- On December 8, 2023, the CI arranged to purchase
  fentanyl from Zierra Jones. The CI communicated with
  Jones through (717) 839-1258. Jones directed the CI to
  4600 High Point Boulevard, Harrisburg, Dauphin County.
  Jones sold the CI 65.23 grams of fentanyl. The
  transaction was audio and video recorded with a device
  utilized by the CI and aerial surveillance.

17.    On November 26, 2023, Shakwon Jamison was taken into
custody by the West Shore Regional Police Department for fleeing and
eluding after officers attempted a traffic stop of Jamison. This
stop/arrest was unrelated to the active investigation by the PA OAG.
Jamison subsequently crashed the vehicle he was operating at the time
causing serious injury to himself. Ultimately, Jamison was placed in
the Cumberland County Prison before being transferred to the State
Correctional Institute – Camp Hill, where he remains on federal and
state detainers.

18.    On July 31, 2024, Shakwon Jamison and Zierra Jones were
indicted by the Grand Jury on distribution of controlled substances

related to fentanyl and methamphetamine distribution, as well as a firearm offense (Jamison) out of the United States District Court Middle District of Pennsylvania (docket No. 1:24-CR-203).

19.    On May 29, 2025 and June 23, 2025, Senior Deputy Attorney General (SDAG) Robert Smulktis and I met with Attorney Elisabeth Pasqualini and Zierra Jones to conduct a proffer interview. During the course of this interview, Jones identified that she was in possession of two (2) wireless telephones that belonged to Shakwon Jamison. Further, Jones related that she was aware that the phones contained photos of Jamison holding firearms.  Jones related that she had access to the phones as Jamison had provided her with the passcodes to both phones after he was incarcerated in November of 2023.  Jones stated that she believed Jamison provided her with the passcodes during a prison phone call with Jamison.  During the June 23 interview, Jones turned the two (2) wireless telephones (identified as iPhones) over to your Affiant.  These phones were placed into evidence at the Pennsylvania Office of Attorney General's Region 3 Bureau of Narcotics Investigation and Drug Control Office, 6400 Flank Drive, Harrisburg, PA 17112, where they have remained.

20.    The Device is currently in the lawful possession of the Pennsylvania State Attorney General's Office (PA OAG).  It came into the **PA OAG**'s possession in the following way:  the two (2) iPhones were turned over to the PA OAG by Zierra Jones on June 23, 2025. Therefore, while the **PA OAG** might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

21.    The Device is currently in storage at the PA OAG Region 3 BNIDC, 6400 Flank Drive, Harrisburg, PA 17112.  In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the PA OAG.

## FUTHER BACKGROUND

22.    Your Affiant knows through training and experience that drug traffickers utilize cellular telephones to make contact with associates who both supply and receive controlled substances from those same traffickers.  Drug traffickers often have historical records that

remain on electronic devices and indicate telephone numbers,
photographs and names of contacts who have called or have been called,
records of received and sent text messages, emails and other forms of
communications that are commonly utilized on web-enabled cellular
telephones. Further, cellular telephones and other electronic devices
are utilized by drug traffickers to contact other associates (or co-
conspirators) who are involved with the supply, transportation and
distribution of illicit drugs and other illegal activities.

23.    Based on the facts outlined in this affidavit, your affiant
believes that there is probable cause to search the electronic devices
seized during this investigation. It is believed that these devices
contain information, data, and images that would be used as evidence
in furtherance of this investigation.

## TECHNICAL TERMS

24.    Based on my training and experience, I use the following
technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile
       telephone, or cellular telephone) is a handheld wireless
       device used for voice and data communication through
       radio signals. These telephones send signals through

networks of transmitter/receivers, enabling
communication with other wireless telephones or
traditional "land line" telephones.  A wireless telephone
usually contains a "call log," which records the telephone
number, date, and time of calls made to and from the
phone.  In addition to enabling voice communications,
wireless telephones offer a broad range of capabilities.
These capabilities include: storing names and phone
numbers in electronic "address books;" sending, receiving,
and storing text messages and e-mail; taking, sending,
receiving, and storing still photographs and moving video;
storing and playing back audio files; storing dates,
appointments, and other information on personal
calendars; and accessing and downloading information
from the Internet.  Wireless telephones may also include
global positioning system ("GPS") technology for
determining the location of the device.

b. Digital camera:  A digital camera is a camera that records
pictures as digital picture files, rather than by using
photographic film.  Digital cameras use a variety of fixed
and removable storage media to store their recorded
images.  Images can usually be retrieved by connecting
the camera to a computer or by connecting the removable
storage medium to a separate reader.  Removable storage
media include various types of flash memory cards or

14

miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR

satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing

16

documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

g.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and

17

international borders, even when the devices
communicating with each other are in the same state.

25.    Based on my training, experience, and research, I know that
the devices have capabilities that allow it to serve as a wireless
telephone, digital camera, portable media player, GPS navigation
device, and PDA.  In my training and experience, examining data stored
on devices of this type can uncover, among other things, evidence that
reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26.    Based on my knowledge, training, and experience, I know
that electronic devices can store information for long periods of time.
Similarly, things that have been viewed via the Internet are typically
stored for some period of time on the device.  This information can
sometimes be recovered with forensics tools.

27.    *Forensic evidence.*  As further described in Attachment B,
this application seeks permission to locate not only electronically stored
information that might serve as direct evidence of the crimes described
on the warrant, but also forensic evidence that establishes how the
Device was used, the purpose of its use, who used it, and when.  There

is probable cause to believe that this forensic electronic evidence might

be on the Device because:

    a. Data on the storage medium can provide evidence of a file
   that was once on the storage medium but has since been
   deleted or edited, or of a deleted portion of a file (such as a
   paragraph that has been deleted from a word processing
   file). Forensic evidence on a device can also indicate who
   has used or controlled the device. This "user attribution"
   evidence is analogous to the search for "indicia of
   occupancy" while executing a search warrant at a
   residence.

    b. A person with appropriate familiarity with how an
   electronic device works may, after examining this forensic
   evidence in its proper context, be able to draw conclusions
   about how electronic devices were used, the purpose of
   their use, who used them, and when.

    c. The process of identifying the exact electronically stored
   information on a storage medium that is necessary to
   draw an accurate conclusion is a dynamic process.
   Electronic evidence is not always data that can be merely
   reviewed by a review team and passed along to
   investigators. Whether data stored on a computer is
   evidence may depend on other information stored on the
   computer and the application of knowledge about how a

computer behaves.  Therefore, contextual information
necessary to understand other evidence also falls within
the scope of the warrant.

d. Further, in finding evidence of how a device was used, the
purpose of its use, who used it, and when, sometimes it is
necessary to establish that a particular thing is not
present on a storage medium.

28.    *Nature of examination.*  Based on the foregoing, and
consistent with Rule 41(e)(2)(B), the warrant I am applying for would
permit the examination of the device consistent with the warrant.  The
examination may require authorities to employ techniques, including
but not limited to computer-assisted scans of the entire medium, that
might expose many parts of the device to human inspection in order to
determine whether it is evidence described by the warrant.

29.    *Manner of execution.*  Because this warrant seeks only
permission to examine a device already in law enforcement's possession,
the execution of this warrant does not involve the physical intrusion
onto a premises.  Consequently, I submit there is reasonable cause for
the Court to authorize execution of the warrant at any time in the day
or night.

## CONCLUSION

30.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

One (1) rose gold iPhone contained in a gray/green Under Armour case located at the PA OAG Region 3 BNIDC Office contained in evidence storage.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

**ITEMS TO BE SEARCHED FOR AND SEIZED**

1.    All records on the Device described in Attachment A that relate to violations of 21 U.S.C. § 841, 21 U.S.C. § 846 and 18 U.S.C. § 924 and including:

    a. Any electronic information or data which may indicate illicit activity concerning records, "owe sheets," notes and/or customer lists, ledgers and other files/data relating to the manufacture, transportation, ordering, purchase and distribution of controlled substances and/or firearms.

    b. lists of customers and related identifying information;

    c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    e. any information recording Shakwon Jamison's schedule or travel from August 2023 to November 2023;

    f. all bank records, checks, credit card bills, account information, and other financial records.

2.    Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created,

edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.